UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LYNDON S. JOHNSON; LARRY RIVENBURG;
MORRIS A. DARLING; LEONARD DAVIDOW;
and DAVID BOWHALL,

                                        Plaintiffs,


             v.                                          8:09-CV-965 (DNH/RFT)


NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES; NEW YORK
STATE DIVISION OF CRIMINAL JUSTICE
SERVICES; THE STATE OF NEW YORK;
BRIAN FISCHER, in his official capacity as
COMMISSIONER of the NEW YORK STATE
DEPARTMENT OF CORRECTIONAL
SERVICES; DENISE O'DONNELL, in her
official capacity as COMMISSIONER of the
NEW YORK STATE DIVISION OF CRIMINAL
JUSTICE SERVICES; and DAVID PATERSON,
in his official capacity as GOVERNOR of the
STATE OF NEW YORK,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

SHEEHAN GREENE CARRAWAY                   LAWRENCE H. SCHAEFER, ESQ.
GOLDERMAN & JACQUES, LLP
Attorneys for Plaintiffs
54 State Street, Suite 1001
Albany, New York 12207

OFFICE OF THE ATTORNEY GENERAL –          ROGER W. KINSEY, ESQ.
ALBANY OFFICE
Attorneys for Defendants
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

Plaintiffs Lyndon S. Johnson, Larry Rivenburg, Morris A. Darling, Leonard Davidow, and David Bowhall ("plaintiffs") sue defendants New York State Department of Correctional Services ("DOCS"), New York State Division of Criminal Justice Services ("DCJS"), the State of New York, DOCS Commissioner Brian Fischer, DCJS Commissioner Denise O'Donnell, and New York State Governor David Paterson for declarative and injunctive relief under the Law Enforcement Officers Safety Act of 2004 ("LEOSA"), 18 U.S.C. § 926C.  Each of the individual defendants are sued in only their official capacities.  Defendants move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b).  Plaintiffs concede that the agency defendants and the State of New York may be dismissed, but they oppose the motion to dismiss as to all other defendants. (See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Dkt. No. 21, 9.)  The motion was considered based upon the parties' submissions without oral argument.

## II.  BACKGROUND

Each of the plaintiffs are retired corrections officers with over twenty-five years of experience working for DOCS.  On July 22, 2004, Congress enacted LEOSA.  The statute provides in pertinent part:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce . . . .

18 U.S.C. § 926C(a).  In order to meet the identification requirements of subsection (d), retired law enforcement officers must possess

(1) a photographic identification issued by the agency from which the individual retired from service as a law enforcement officer that indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the agency to meet the standards established by the agency for training and qualification for active law enforcement officers to carry a firearm of the same type as the concealed firearm; or

(2)(A) a photographic identification issued by the agency from which the individual retired from service as a law enforcement officer; and (B) a certification issued by the state in which the individual resides that indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the State to meet the standards established by the State for training and qualification for active law enforcement officers to carry a firearm of the same type as the concealed firearm.

Id. § 926C(d).

Prior to filing their lawsuit, plaintiffs made several written requests to DOCS and DCJS for the identification described in subsection (d).  In their requests, plaintiffs explained that they satisfy all of LEOSA's requirements for carrying a concealed firearm across state lines except for the state-issued photographic identification and/or certification.  In response, both DOCS and DCJS stated their refusal to administer firearm training or certification for retired law enforcement officers.

Plaintiffs' lawsuit for declaratory and injunctive relief followed.  In their amended complaint, plaintiffs seek an order declaring: (1) that LEOSA preempts state law; (2) that the defendants must certify retired law enforcement officers who have met New York's standards to carry a firearm of the same type as the concealed firearm; and (3) that the defendants must issue the appropriate photographic identification and/or certification described in subsection (d) of the statute.  Finally, defendants also seek injunctive relief ordering the

defendants to take necessary action to permit retired law enforcement officers to qualify to carry concealed firearms as provided under LEOSA.

## III.  **DISCUSSION**

Defendants do not specify whether their motion to dismiss is filed under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  Instead, they more generally assert that their motion is filed pursuant to Rule 12(b).  (See Defs.' Notice of Mot. to Dismiss, Dkt. No. 20, 1.) Significantly, at least one of defendants' grounds for dismissal is based upon whether plaintiffs' cause of action raises a federal question.  (See Defs.' Mem. of Law in Supp. of Mot. to Dismiss, Dkt. No. 20-1, 6-7.)  In any event, both Rule 12(b)(1) and Rule 12(b)(6) require the liberal construction of plaintiffs' complaint and the acceptance of all factual allegations as true.  See Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (citing Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  Under Rule 12(b)(1), dismissal is proper where there is no statutory or constitutional authority to adjudicate the controversy at issue. See Ford, 579 F.3d at 188 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  Under Rule 12(b)(6), a plaintiff's complaint will survive a motion to dismiss so long as there are "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

Defendants move to dismiss plaintiffs' complaint on four separate grounds.  First, they contend they are not the proper parties to plaintiffs' lawsuit.  Second, they argue that LEOSA does not create a private cause of action for the relief sought.  Third, defendants assert that Congress, by enacting LEOSA, may not constitutionally require state officials to help implement a firearm certification program for retired law enforcement officers.  Fourth,

defendants contend that LEOSA does not preempt the states' authority to issue the identification described in subsection (d).

### A.  The Proper Parties to Plaintiffs' Lawsuit

Plaintiffs concede that DOCS, DCJS, and the State of New York are not proper parties.  (See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Dkt. No. 21, 9); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-101, 104 S. Ct. 900, 908 (1984) (holding that states and their respective agencies are immune from suits brought by citizens in federal court "regardless of the nature of the relief sought") (citations omitted). Accordingly, there is only a question of whether defendants Fischer, O'Donnell, and Paterson should be parties to plaintiffs' lawsuit.

Defendants contend that none of the individual state officers are proper parties because they have no involvement with New York's process for issuing firearm licenses. Under Ex parte Young, a state officer sued in his official capacity must be connected to the alleged violation of federal law.  209 U.S. 123, 157, 28 S. Ct. 441, 453 (1908).  Absent any allegation of a state officer's personal involvement, simply naming him as a defendant is nothing more than "making him a party as a representative of the state" in an effort to circumvent the state's sovereign immunity under the Eleventh Amendment.  Id.

However, plaintiffs do not allege that New York State's firearm licensing scheme is in violation of federal law.  Rather, they assert that the defendants' failure to issue photographic identification and certifications violates LEOSA.  Although subtle, this distinction is significant because defendants Fischer and O'Donnell are alleged to have decided on behalf of their respective agencies not to issue the requested identification and certifications for all retired law enforcement officers.  Additionally, defendants concede that

individual state officers acting in their official capacity are the proper parties to suits for prospective injunctive relief that are based upon the alleged violation of a federal law.  (See Defs.' Mem. of Law in Supp. of Mot. to Dismiss, Dkt. No. 20-1, 6.)  For both of these reasons, the motion to dismiss defendants Fischer and O'Donnell will be denied.

With respect to defendant Paterson, his role as New York's Governor is insufficient by itself to name him as a defendant.  As with defendants Fischer and O'Donnell, plaintiffs must plead facts showing that defendant Paterson had a connection with the alleged violation of federal law.  See Maloney v. Cuomo, 470 F. Supp.2d 205, 211 (E.D.N.Y. 2007) (citing Wang v. Pataki, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001)).  A review of plaintiffs' amended complaint shows that the only allegation against him is that he serves as New York's Governor.  (Pls.' Am. Compl., Dkt. No. 12, ¶ 18.)  Plaintiffs do not cite to any other allegations within the amended complaint in support of their argument that defendant Paterson is a proper party.  Therefore, the motion to dismiss all claims against defendant Paterson will be granted.

### B.  The Right to a Private Cause of Action under LEOSA

Defendants argue that plaintiffs' complaint should be dismissed in its entirety because LEOSA does not establish a private cause of action.  According to defendants, LEOSA merely bars the criminal prosecution of officers who qualify under the statute's requirements to carry concealed firearms across state lines.

Whether a private cause of action exists depends upon Congress's intent.  See Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519 (2001).  The mere creation of a *private right* is insufficient; rather, in order to afford plaintiffs an enforcement mechanism by way of a civil action, Congress must also have intended the creation of a *private remedy*.

Id. (noting the distinction between a private right and a private remedy).  Additionally, the

Supreme Court cautioned that "[r]aising up causes of action where a statute has not created

them may be a proper function of common-law courts, but not for federal tribunals."  Id. at

287, 121 S. Ct. at 1520 (quoting Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501

U.S. 350, 365, 111 S. Ct. 2773, 2783 (1991) (Scalia, J., concurring in part and concurring in

judgment)).

    The Second Circuit recently considered whether the Railway Labor Act ("RLA")

established a private cause of action for individual employees who alleged the deprivation of

their rights under the statute.  Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47 (2d

Cir. 2009).  In that case, the court first determined that there was "nothing in the RLA's text or

structure suggesting Congress's intent to create a private remedy."  Id. at 52.  Having already

evaluated the explicit language of the RLA, the court next considered whether Congress

nevertheless implied for there to be a private remedy.  Id. ("We next proceed to consider

'whether a private remedy is implicit in [the] statute.") (quoting Cort v. Ash, 422 U.S. 66, 78,

95 S. Ct. 2080, 2088 (1975)).

    The Supreme Court identified four factors in Cort v. Ash for determining whether

there is an implicit private remedy in a federal statute:

> First, is the plaintiff one of the class for whose especial benefit the statue was
> enacted–that is, does the statute create a federal right in favor of the plaintiff?
> Second, is there any indication of legislative intent, explicit or implicit, either to
> create such a remedy or to deny one?  Third, is it consistent with the underlying
> purposes of the legislative scheme to imply such a remedy for the plaintiff?  And
> finally, is the cause of action one traditionally relegated to state law, in an area
> basically the concern of the States, so that it would be inappropriate to infer a
> cause of action based solely on federal law?

Cort, 422 U.S. at 78, 95 S. Ct. at 2088 (internal citations and quotations marks omitted).  The

Lindsay court acknowledged that, in the wake of the Sandoval ruling, relatively recent

decisions, e.g., Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 286 F.3d 613, 619

(2d Cir. 2002); Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429, 434 (2d Cir. 2002), cast

doubt upon the use of the Cort factors to find an implicit right to a private cause of action, but

the court nonetheless held that application of the factors was proper "to illuminate [its]

analysis of congressional intent."  Lindsay, 581 F.3d at 53 n.3.

      Accordingly, the question of whether LEOSA creates a private cause of action

warrants the same two-part inquiry conducted in Lindsay: first, whether Congress, through

the text or structure of the statute, expressly intended to establish a private cause of action

for retired law enforcement officers; and second, whether application of the Cort factors

demonstrates an implicit private remedy.

## 1.  Text and Structure of LEOSA

      Without clear statutory language establishing a private cause of action, courts

"begin with the presumption that Congress did not intend one."  Bellikoff v. Eaton Vance

Corp., 481 F.3d 110, 116 (2d Cir. 2007).  Additionally, "the absence of 'rights-creating

language' indicates a lack of congressional intent to create private rights of action."  Id.

(quoting Olmsted, 283 F.3d at 435).

      At a minimum, LEOSA provides a *federal right* for qualified retired law enforcement

officers who possess the requisite identification to lawfully carry concealed firearms across

state lines.  See 18 U.S.C. § 926C(a).  However, any rights expressly conferred by the

statute are contingent upon a retired officer's possession of "the identification required by

subsection (d)."  Id.  Nothing in the text or structure of the statute bestows either an explicit

right to obtain the identification required under § 926C(d) or a *federal remedy* for a state agency's failure to issue such identification.[1]   Therefore, Congress did not expressly intend to create a private cause of action under LEOSA.

## 2. Application of the *Cort* Factors

As discussed, the first factor considered under the Cort analysis is whether the plaintiffs are members of the class of persons for whom LEOSA was intended to benefit. Plaintiffs cite to the statute's legislative committee report in support of their position that retired law enforcement officers such as themselves were the intended beneficiaries of LEOSA.  However, plaintiffs' argument ignores the statutory limitations on the class of persons Congress intended to benefit: "an individual who is a qualified retired law enforcement officer *and* who is carrying the identification required by subsection (d) . . . ."  18 U.S.C. § 926C(a) (emphasis added).  Plaintiffs do not necessarily fall within the class of individuals benefitted by LEOSA by virtue of their status as retired law enforcement officers. To the contrary, Congress prescribed that retired law enforcement officers must be qualified as defined within subsection (c) of the statute and in possession of the requisite identification described in subsection (d).  Congress therefore established two distinct limitations on the class of persons for whom LEOSA was enacted to benefit.  That plaintiffs appear to satisfy the definition of "qualified retired law enforcement officer" under subsection (c) does not eliminate the requirement that they be in possession of one of the forms of identification required under subsection (d).  Accordingly, plaintiffs are not presently a member of the class

---

[1]  Plaintiffs, in effect, concede that Congress's intent to create a private cause of action, if any, must be implied from consideration of the factors developed in Cort.  (See Pls.' Mem. of Law in Opp'n to Summ. J., Dkt. No. 21, 11.)  Instead of arguing that the text and structure of LEOSA expressly creates a private cause of action, plaintiffs only contend that there is no statutory language "specifically denying or withholding a private cause of action.  Id.

of individuals for whom LEOSA was intended to benefit because they concede that they do

not possess the requisite identification.

The second factor, i.e., whether there is any explicit or implicit indication of

legislative intent to create a private cause of action, has been afforded greater emphasis in

the wake of the Cort decision.  See Health Care Plan, Inc. v. Aetna Life Ins. Co., 966 F.2d

738, 740 (2d Cir. 1992) (citing Karahalios v. Nat'l Fed'n of Federal Employees, Local 1263,

489 U.S. 527, 532-33, 109 S. Ct. 1282, 1286-87 (1989); Touche Ross & Co. v. Redington,

442 U.S. 560, 575-76, 99 S. Ct. 2479, 2488-89 (1979); Erwin Chemerinsky, Federal

Jurisdiction 318-20 (1989)).  Plaintiffs contend the lack of any other enforcement mechanism

for the rights created by LEOSA implies Congress's intent to create a private cause of action.

Without access to the federal courts, plaintiffs believe Congress's objective to allow retired

law enforcement officers to carry concealed firearms will be frustrated in the event that

states, such as is the case with New York, refuse to issue the identification needed to benefit

from the statute.  Although LEOSA is silent as to how retired law enforcement officers may

force states to provide them with the identification described in subsection (d), the lack of an

enforcement mechanism cuts against plaintiffs' position.  Congress expressly left the

authority to issue the identification described in subsection (d) in the hands of the relevant

state agency.  See 18 U.S.C. § 926C(d).  The identification may only be "issued by the

agency from which the individual retired from service as a law enforcement officer" and only

after the individual has "been tested or otherwise found *by the agency* to meet the standards

*established by the agency* for training and qualification for active law enforcement officers to

carry a firearm of the same type as the concealed firearm."  Id. (emphasis added).

Congress's decision to allow the states to establish their own firearm permit standards and to

issue their own concealed firearm certifications is directly at odds with plaintiffs' argument that Congress implicitly intended to create a private cause of action by which retired law enforcement officers could compel state agencies to issue the identification required under LEOSA.  By allowing the states to use their own standards and make their own decisions, it is inferred that Congress did not intend to create a private remedy under LEOSA; rather, it only intended to create a private right.  Accordingly, the second Cort factor does not support a finding that Congress intended to create a private cause of action.

In relation to the third factor in the Cort analysis, plaintiffs again rely on the lack of an enforcement mechanism.  (See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Dkt. No. 21, 13-14.)  For the same reasons as with consideration of the second Cort factor, the creation of a federal remedy would be inconsistent with LEOSA's statutory scheme because Congress left the states with the authority to issue concealed firearm certifications.  Therefore, this factor also weighs against the determination that Congress intended to establish a private cause of action.

The fourth and final Cort factor asks whether plaintiffs' lawsuit concerns an area of law normally reserved for the states.  As a preliminary matter, plaintiffs concede that "states have traditionally determined who may, and who may not, carry concealed weapons within their boundaries." Id. at 14.  Nevertheless, they contend that Congress intended a private cause of action because LEOSA was enacted to supersede states' traditional province over concealed firearm licenses.  Even if states' traditional control over the locus of plaintiffs' lawsuit is ignored, plaintiffs' argument still rests upon the erroneous belief that LEOSA creates a federal requirement for state officers to issue the identification described in subsection (d) of the statute.  Rather than commandeer state officials by requiring them to

issue the requisite identification under federal law, Congress has left this authority with the states.  Although LEOSA bars the criminal prosecution of qualified retired law enforcement officers who are in possession of the identification required under subsection (d), the statute is devoid of any intent, either explicit or implicit, to impinge upon the states' authority to issue the identification in question.  Therefore, Congress did not intend to create a private cause of action under LEOSA.

### C.  Constitutionality of Plaintiffs' Requested Relief

Plaintiffs' complaint is equally deficient because the relief they seek would run afoul of the constitutional balance of power between the states and the federal government.  If successful, plaintiffs' lawsuit would culminate in an order directing state officers to issue the identification required under subsection (d) of LEOSA.   Accordingly, the issue presented is not whether Congress may constitutionally legalize the possession of concealed firearms that have been shipped or transported across state lines.  Instead, defendants raise the issue of whether state officers may be forced to help achieve a federal objective.

The Supreme Court's holding in Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365 (1997) is particularly relevant.  In Printz, the Court considered the constitutionality of a federal law that required state law enforcement officers to conduct background checks on prospective gun purchasers.  521 U.S. at 901, 117 S. Ct. at 2368.  The Court ultimately concluded that the federal statute at issue, the Brady Handgun Violence Prevention Act, was unconstitutional because it required state officers to enact or enforce a federal regulatory program.  Id. at 935, 117 S. Ct. at 2384.

Plaintiffs argue that the holding in Printz is inapplicable here because LEOSA does not ask state officers to implement a federal scheme.  Plaintiffs are correct to the extent that

LEOSA makes use of states' pre-existing standards for allowing law enforcement officers to carry firearms.  See 18 U.S.C. § 926C(d).  However, notwithstanding the use of states' standards in lieu of federally created standards, LEOSA remains a *federal scheme* for allowing retired law enforcement officers to carry concealed firearms in interstate commerce because it confers rights upon individuals under federal law.  In order to compel the defendants in this case to provide the plaintiffs with the identification required under subsection (d), the defendants must be under some affirmative obligation pursuant to LEOSA.  If that is the case, LEOSA necessarily violates the holding in Printz because it would then constitute a federal program under which state officers are required take action in order to help achieve the statute's objective.  On the other hand, if state officers are under no obligation to provide the identification described in subsection (d), plaintiffs have failed to state a violation of federal law.  Between these two different statutory interpretations, plaintiffs are faced with the untenable choice of either asking for an unconstitutional exercise of federal authority or failing to state a claim upon which relief may be granted.

Plaintiffs' argument as to the minimal burden placed upon the state officers is equally unpersuasive.  Any weighing of the states' burden is irrelevant "where, as here, it is the whole *object* of the law to direct the functioning of the state executive, and hence to compromise the structural framework of dual sovereignty . . . ."  Printz at 932, 117 S. Ct. at 2383 (emphasis in original).  Even if plaintiffs were able to demonstrate that LEOSA established a federal mandate for state officers to issue the identification described in subsection (d), the extent of the burden placed upon the state officers would make no difference because the object of the law would then be to "direct the functioning of the state

executive." Therefore, the allegedly minor burden placed upon state officers does not justify plaintiffs' requested relief.

### D. Preemption of States' Authority to Issue the Identification

For many of the same reasons, LEOSA does not preempt states' authority to issue the identification described in subsection (d). As with the arguments already considered, the relevant issue for preemption is congressional intent. See Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 30, 116 S. Ct. 1103, 1107 (1996). Congress's intent to preempt state law may be established in three different ways: first, actual language in the federal statute may show an explicit intent to set aside the state law at issue; second, the structure and purpose of the federal law may demonstrate an implicit preemptive intent; or third, congressional intent may be inferred if the federal and state laws are in irreconcilable conflict with one another. Id. at 31, 116 S. Ct. at 1108.

Although Congress explicitly intended LEOSA to apply "[n]otwithstanding any other provision of the law of any State[,]" 18 U.S.C. § 926C(a), the statute's language only demonstrates an intent to bar the criminal prosecution of retired law enforcement officers who carry concealed firearms in interstate commerce. The same paragraph cited by plaintiffs makes clear that the federal right to carry a concealed firearm in interstate commerce is contingent upon an individual's possession of the requisite *state-issued* identification described in subsection (d). Without question, Congress intended to supersede state criminal laws so as to allow qualified retired law enforcement officers to carry concealed firearms. However, Congress also intended to limit the class of retired law enforcement officers to those in possession of the requisite identification, and rather than enlist the assistance of federal officers to apply federally created standards for carrying concealed

firearms, Congress asked state agencies to certify that retired law enforcement officers meet their respective state's firearm standards.  Id § 926C(d).  Therefore, given the statute's language, there is no explicit congressional intent to preempt states' authority to issue the identification needed to carry a concealed firearm pursuant to LEOSA.

Ultimately, the holding in Printz makes any remaining issue of preemption irrelevant.  Even if Congress implicitly intended to preempt states' authority to issue the identification described in subsection (d), such an exercise of Congress's legislative power, i.e., requiring state officers to certify retired law enforcement officers, would violate the Supreme Court's rule against commandeering state officers to implement a federal program.  Likewise, although defendants' refusal to issue the requisite identification may constitute an irreconcilable conflict with LEOSA's objective, Printz renders Congress unable to legislatively require the defendants to certify that the plaintiffs have met New York's standards for carrying a firearm of the same type as the concealed firearm.

## IV.  CONCLUSION

Plaintiffs' frustration with defendant Fischer's and defendant O'Donnell's refusal to issue the identification required by LEOSA is understandable.  Undisputably, LEOSA established a federal right for retired law enforcement officers to carry concealed firearms across state lines.  Nevertheless, the complaint must be dismissed because Congress lacks the constitutional authority to enact a federal law under which state officers are required to take action in order to help implement the law's objective.  Furthermore, and perhaps in recognition of the limitation placed upon its authority after the Supreme Court's holding in Printz, Congress did not intend to create an affirmative obligation for state officers to provide retired law enforcement officers with the identification described in subsection (d).  For all of

these reasons, plaintiffs do not have a right to a private cause of action under LEOSA, and the relief they seek is constitutionally impermissible.

Accordingly, it is

ORDERED that

(1) Defendants' motion to dismiss is GRANTED;

(2) Plaintiffs' complaint is DISMISSED; and

(3) The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: April 30, 2010
       Utica, New York

- 16 -